IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| RUSSELL ROBINSON | : | CIVIL ACTION |
| | : | No. 08-103 |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |

**MEMORANDUM**

Juan R. Sánchez, J.  November 12, 2009

Russell Robinson filed a *pro se* motion under 28 U.S.C. § 2255, challenging his sentence as one imposed in violation of his Sixth and Fourteenth Amendment rights. Robinson asks this Court to reverse the judgment against him and grant him a new trial or order his immediate release from custody. If such relief is denied, Robinson asks this Court to grant him an evidentiary hearing. After a careful review of the record, the Court concludes Robinson is not entitled to any relief or a hearing.

On April 7, 2003, Robinson was arrested for his participation as an advisor and pilot for an organization which imported, trafficked, and distributed large amounts of cocaine in the United States Virgin Islands. On April 11, 2003, a grand jury indicted Robinson and on July 11, 2005, his trial began. On August 3, 2005, the jury returned a verdict, finding Robinson guilty of conspiracy to possess with intent to distribute cocaine, conspiracy to import cocaine, and conspiracy to launder money. On February 28, 2007, Robinson was sentenced to 160 months of incarceration. He filed a direct appeal and the Third Circuit affirmed his conviction on August 15, 2008.

On November 17, 2008, Robinson filed the instant motion for post-conviction relief. Robinson alleges four categories of constitutional violations: (1) denial of his Sixth Amendment right to represent himself; (2) denial of his Fourteenth Amendment right to testify on his own behalf; (3) denial of his Fourteenth Amendment due process rights as recognized in *Brady v. Maryland*, 373

1

U.S. 83 (1963); and (4) denial of his Sixth Amendment right to effective assistance of counsel.

Robinson claims he was denied his right to represent himself and testify on his own behalf at trial, be provided with *Brady* exculpatory materials, and have effective assistance of counsel. A prisoner held under a sentence imposed in violation of the Constitution or federal law "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. A court must hold an evidentiary hearing on the matter "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Id.*; *United States v. Nino*, 878 F.2d 101, 103 (3d Cir. 1989). Robinson's claims are without merit. He is entitled to no relief and thus, no evidentiary hearing.

Robinson claims his "unequivocal request to proceed *pro se*" was denied without a hearing in violation of his Sixth Amendment right to represent himself. Pet'r's Br. at 8. Although Robinson initially made a clear and unequivocal request for self-representation by motion more than nine months before trial, he retracted his request at a hearing conducted three months before trial. Thereafter, Robinson through his conduct abandoned his initial request to represent himself. Robinson never renewed his request for self-representation during the fourteen days of his trial.

Robinson had a right to represent himself. The Sixth Amendment protects a defendant's right to refuse counsel and proceed *pro se*. *Faretta v. United States*, 422 U.S. 806, 814 (1975) ("[T]he Sixth Amendment right to the assistance of counsel implicitly embodies a correlative right to dispense with a lawyer's help.") (citation and internal quotation marks omitted); *United States v. Peppers*, 302 F.3d 120, 129 (3d Cir. 2002) ("The right to counsel embodied within the Sixth Amendment carries as its corollary the right to proceed *pro se*."). Since the right is structural, its

denial cannot be harmless.[1] *Id.* at 127.

A defendant must assert his right to proceed *pro se* clearly and unequivocally. *Id.* at 132-33 (noting a defendant "'must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made.'") (quoting *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986)); *Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000) ("a defendant's request of self-representation in a criminal trial must be made clearly and unequivocally"). This is a prerequisite for assertion of a right to self-representation. *Peppers*, 302 F.3d at 132 n.10; *Buhl*, 233 F.3d at 792 ("This requirement prevents defendants from making casual and ineffective requests to proceed *pro se*, and then attempting to upset 'adverse verdicts after trials at which they had been represented by counsel.'") (quoting *U.S. ex rel. Maldonado v. Denno*, 348 F.2d 12, 16 (2d Cir. 1965)). As a threshold inquiry, it is the trial court's responsibility to determine whether the defendant's request to proceed *pro se* is clear and unequivocal. *Peppers*, 302 F.3d at 129.

In a motion filed on September 28, 2004, more than nine months before his trial began, Robinson made an unequivocal request to represent himself, with his attorney, Stephen Brusch, Esq., to act as standby counsel. Robinson wanted to represent himself because his attorney had met with him only four times, Robinson felt his attorney was insufficiently apprised of the factual details of his case, and Robinson was dissatisfied with his attorney's advocacy skills, poor communication, and lack of responsiveness.

---

[1] Structural errors are "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards. The entire conduct of the trial from beginning to end is obviously affected[,]" *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991), such that the trial fails to "serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark*, 478 U.S. 570, 577-78 (1986) (citation omitted).

Three months before his trial began on July 11, 2005, Robinson retracted his initial written request to represent himself. Robinson's motion to represent himself was pending on May 13, 2005, the day the trial court conducted a pretrial hearing at which all defendants and their counsel appeared, including Robinson represented by his attorney, Brusch. During the course of the lengthy hearing, the court asked Robinson if he still pressed the motion to represent himself. When questioned by the trial court, Robinson did not clearly and unequivocally declare he wanted to represent himself and did not want counsel. Instead, Robinson stated he needed "to sit" with his attorney to discuss "a lot" of things, clearly indicating he needed the continued assistance of counsel:

| | |
|---|---|
| **THE COURT:** | Mr. Robinson, you filed a motion at some point. You filed a number of motions. One of the motions was the motion to represent yourself. Do you still press that motion? |
| **ROBINSON:** | Your Honor, the problem is I need to sit with my attorney at some point in time.[2] |

---

[2] Robinson retracted his initial written request for self-representation during the following exchange with the trial court :

| | |
|---|---|
| **THE COURT:** | Mr. Robinson, you filed a motion at some point. You filed a number of motions. One of the motions was the motion to represent yourself. Do you still press that motion? |
| **ROBINSON:** | Your Honor, the problem is I need to sit with my attorney at some point in time. There's a lot, a lot, a lot, a lot, a lot of things that you wouldn't believe has been going on in the United States Virgin Islands, including me having to file a complaint about the Magistrate of this building with the Third Circuit Court. It's docketed. It's docketed right now.<br><br>It has to do with this case, including events that happened this morning on the way to court. And this prosecutor engineered it. Because among - - - |
| **THE COURT:** | Just a minute. Mr. Brusch is here to represent you in this matter. |

(continued . . . )

Hr'g Tr. at 10:9-11:7, May 13, 2005.

A week after the hearing, the trial court denied Robinson's motion to represent himself based on Robinson's moving papers and his "representation during the May 13, 2005 hearing that he was unsure if he could adequately represent himself." Order of May 18, 2005. Less than three months later, Robinson went to trial represented by his attorney, Brusch, without challenging the denial of his motion for self-representation or renewing his motion for self-representation.

The Sixth Amendment protected Robinson's right both to proceed *pro se* and to be

---

| | |
|---|---|
| **ROBINSON:** | Mr. Brusch. |
| **THE COURT:** | Are you satisfied with him representing you in this matter? |
| **ROBINSON:** | That's what the law says. That's an unintelligent decision. |
| **THE COURT:** | Well, the law says Mr. Brusch will represent you in this matter. |

Hr'g Tr. at 10:9-11:7, May 13, 2005.

The trial court properly determined Robinson was not clearly asserting his right of self-representation but rather, was seeking alternative counsel. Once Robinson elected to proceed with counsel, the trial court was relieved of any burden of further inquiry as to whether Robinson was knowingly, voluntarily, and intelligently waiving his right to counsel in favor of his right to self-representation. *See Buhl v. Cooksey*, 233 F.3d 783, 808 (3d Cir. 2000) (noting a criminal defendant is required to make a clear and unequivocal request to proceed *pro se* in order to invoke his right to self-representation and trigger the need for a full *Faretta* inquiry) (Scirica, J., dissenting).

Although Robinson complained about Brusch, the trial court found no reason to substitute new counsel to replace Brusch. The trial court had no obligation to provide Robinson with a lawyer he preferred. *Faretta* holds a criminal defendant has a Sixth Amendment right to represent himself, but does not hold the defendant has the right to choose any advocate if the defendant wishes to be represented by counsel. *See Wheat v. United States*, 486 U.S. 153, 159 n.3, 159 (1988) ("Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.").

5

represented by counsel. *See Buhl*, 233 F.3d at 789 (stating, "[t]he Sixth Amendment right of self-representation differs from other constitutional rights because it can not be exercised without the concomitant waiver of another fundamental right that is also guaranteed with the Sixth Amendment; the right to counsel"). Robinson did not clearly and unequivocally waive his right to counsel and invoke his right to self-representation. Instead, he vacillated, stating at the hearing on May 13, 2005, he needed the assistance of counsel, which contradicted his initial request to represent himself.

The trial court correctly resolved Robinson's vacillation about his desire for self-representation in favor of Robinson's right to representation by counsel. Courts must indulge every reasonable presumption against a waiver of counsel. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). If the right to counsel has not clearly been waived in favor of self-representation, "'the nature of the two rights makes it reasonable to favor the right to counsel . . . .'" *Pitts v. Redman*, 776 F. Supp. 907, 914 (D. Del. 1991) (quoting *Tuitt v. Fair*, 822 F.2d 166, 174 (1st Cir. 1987)), *aff'd*, 970 F.2d 899 (3d Cir.), *cert. denied*, 506 U.S. 1003 (1992)).

Moreover, Robinson through his conduct abandoned his previous written request to proceed *pro se*. After the exchange between the trial court and Robinson at the May 13, 2005 hearing, the court heard lengthy testimony and argument about the admissibility of the government's wiretap tape-recordings. Robinson relied on Brusch's representation at the hearing. Brusch made numerous objections and cross-examined a witness for the Government on Robinson's behalf. Robinson never expressed to the trial court any renewed desire to represent himself at any time during the remainder of the hearing. Robinson's conduct was tantamount to a withdrawal of his initial request for self-representation. *See Buhl*, 233 F.3d at 800 (noting it is well established a defendant can waive the right of self-representation after asserting it); *Wilson v. Walker*, 204 F.3d 33, 36-38 (2d Cir. 2000)

6

(holding defendant waived through abandonment a previously asserted right to represent himself where in response to the court's question whether appointed counsel was "agreeable" to him, defendant voiced no objection and stated nothing about representing himself, and during the rest of pretrial proceedings and during trial, there was no further discussion on the record about appointed counsel's representation or defendant's previously expressed desire to proceed *pro se*).

Further showing Robinson did not intend to waive his right to counsel, Robinson went through trial represented by the same attorney, Brusch. If a defendant proceeds to trial represented by counsel, the defendant "has not articulated a desire to waive that right and exercise his/her right to proceed *pro se*." *Pazden v. Maurer*, 424 F.3d 303, 313 (3d Cir. 2005). Although Robinson grumbled about his attorney on the morning of jury selection,[3] later in the afternoon after the jury had been selected, the trial court asked him directly if he wanted to represent himself. Robinson failed to respond affirmatively:

> **THE COURT:** Mr. Robinson has made complaints about you [Brusch], but he has not asked that you withdraw from representation.
>
> Is that right? Such that you [Robinson] would be required now to represent yourself?
>
> **ROBINSON:** Your Honor, am I permitted to explain?

Jury Selection Tr., vol. 5, 147-48, July 15, 2005. Robinson never answered the trial court's questions. Robinson did not make a request to conduct his own defense during fourteen days of trial.

Robinson, having decided to take advantage of the benefits of counsel for the full course of trial, cannot now claim he was denied his right to represent himself, when he never made a clear and

---

[3] *See* Jury Selection Tr., vol. 5, 13:24-19:5, July 15, 2005 (showing Robinson complained about his attorney to the trial court, but Robinson never asked to represent himself).

7

unequivocal request to do so. Accordingly, Robinson's claim of being denied his right to proceed *pro se* in violation of his Sixth Amendment right to represent himself fails.

Robinson claims two violations of his Fourteenth Amendment rights. Robinson first claims he "repeatedly asserted" his desire to testify on his own behalf at trial, but his attorney, Brusch, refused to allow Robinson to testify. Pet'r's Br. at 9. A defendant has the right to testify on his own behalf. *United States v. Batista*, 483 F.3d 193, 197 (3d Cir. 2007) (citing *United States v. Dunnigan*, 507 U.S. 87, 96 (1993)). Robinson, however, did not at any time during the trial tell the trial court he desired to testify or his attorney was actively preventing him from testifying. There is no evidence he was prevented from testifying. The record fairly supports the inference Robinson did not testify because in Brusch's professional judgment, it was best for Robinson not to take the witness stand.

Generally, a trial court does not have a duty "'to verify that the defendant who is not testifying has waived the right voluntarily.'" *United States v. Leggett*, 162 F.3d 237, 246 (3d Cir. 1998) (quoting *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995)). A direct colloquy with the defendant is necessary only if "exceptional, narrowly defined circumstances" are present. *See Pennycooke*, 65 F.3d at 12 (holding defendant's repeated interruption of his trial to express his desire to testify is the type of exceptional circumstance requiring a trial court colloquy). The decision whether to have the defendant testify is a strategic decision generally within a lawyer's judgment. *See Leggett*, 162 F.3d at 247 ("[I]t is defense counsel's responsibility, not the trial court's, to make sure the defendant is informed of the right to testify . . . ."). Finally, "a barebones assertion by the defendant" that he was denied his right to testify is insufficient to require a hearing. *D'Amario v. United States*, 403 F. Supp. 2d 361, 371 (D.N.J. 2005). More specific evidence is required. *See id.* (noting "an affidavit from the lawyer who allegedly forbade his client to testify" is the type of

8

specific evidence requiring a hearing).

Here, the record does not indicate any exceptional circumstance existed during the trial which might have required the trial court to investigate why Robinson was not testifying. Robinson presents no evidence indicating his attorney's decision was motivated by anything other than sound professional judgment. Accordingly, Robinson was not denied his right to testify on his own behalf in violation of the Fourteenth Amendment.

Robinson also claims the Government withheld material exculpatory and "impeachment documentary evidence" in violation of the Fourteenth Amendment due process rights recognized in *Brady v. Maryland*, 373 U.S. 83 (1963). Pet'r's Br. at 10. In *Brady*, the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." *Id.* at 87. The dispositive question is whether a defendant received a fair trial in the absence of the suppressed evidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). There is no constitutional error when post-trial investigation reveals potentially useful evidence unlikely to have changed the verdict. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Here, Robinson references two documents which he believes *Brady* required the Government to disclose. The first is a General Declaration form submitted to the United States Customs Service indicating David Peltier and Craig Hendricks were crew members of an airplane arriving in St. Thomas on February 14, 2003. Robinson argues this document is materially exculpatory because it casts doubt on the Government's assertion he was involved in a drug and money laundering conspiracy on February 14, 2003. Pet'r's Br. at 11. Robinson argues this document negates proof of his participation in the conspiracy because the document indicates Peltier was piloting the plane

for Hendricks on February 14, 2003.

While the General Declaration form supports Robinson's contention he was not piloting the plane on February 14, 2003, it fails to rise to the standard of "material either to guilt or to punishment" articulated in *Brady*. In light of other substantial evidence demonstrating Robinson's participation in the charged conspiracies, one document indicating Robinson did not pilot a plane on a specific day does not undermine confidence in either the jury's verdict or the fairness of Robinson's trial. Accordingly, the Government was not required by *Brady* to provide the General Declaration form to Robinson.

The second document Robinson claims *Brady* required the Government to disclose is a flight record, which indicates Peltier and Hendricks flew together on March 6, 2003. Peltier testified he stopped flying for Hendricks during the first two months of 2003, but continued to perform a few deliveries for Hendricks. Robinson contends this flight record would have "cast grave doubt" on the credibility of Peltier's testimony. Pet'r's Br. at 11.

The flight record, however, is entirely consistent with Peltier flying occasionally as a pilot for Hendricks after February 2003. This document is not material to Robinson's guilt or punishment, and *Brady* did not require the Government to provide it to Robinson. Accordingly, Robinson's claims predicated upon his Fourteenth Amendment due process rights under *Brady* are without merit.

Robinson complains his attorney, Brusch, performed ineffectively on numerous occasions in violation of Robinson's Sixth Amendment right to representation by counsel. None of the instances Robinson identifies, however, demonstrate deficient assistance rising to the level of a constitutional violation.

For any instance of Brusch's performance to constitute a constitutional violation, Robinson

must demonstrate Brusch's conduct did not meet the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Robinson must show his counsels's performance was deficient because it fell "below an objective standard of reasonableness[,]" with reasonableness determined by focusing on "prevailing professional norms," and this deficient performance prejudiced his defense. *Id.* at 687-88. The relationship between counsel and his client need not be perfect, as the Sixth Amendment does not "guarantee[] a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Instead, courts consider "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Robinson claims there was "a complete breakdown of any form of communication" and an "irreconcilable conflict" between him and Brusch, which rendered his counsel's assistance ineffective. Pet'r's Br. at 3. Robinson says Brusch repeatedly refused to accept or return telephone calls or answer written correspondence.

There is no rule setting the appropriate amount of attorney-client communication. Instead, an attorney's conduct simply needs to comply with prevailing professional norms. *Strickland*, 466 U.S. at 687-88. These norms tolerate a minimal level of contact between an attorney and client. *See United States v. Junne*, 458 F.2d 1156, 1157-58 (3d Cir. 1972) (denying ineffective assistance claim where attorney was appointed two days before trial and had limited contact with client); *Villot v. Varner*, 465 F. Supp. 2d 439, 446-47 (E.D. Pa. 2006) (holding counsel was not ineffective where counsel only met and conferred with client five times); *Navarro v. Johnson*, 365 F. Supp. 676, 688 (E.D. Pa. 1973) (rejecting ineffective assistance claim where attorney did not meet client until morning of trial and spoke to him for only five minutes).

11

Although Robinson claims Brusch was not responsive, the record reflects there was communication between them. In his motion to proceed *pro se*, which was filed more than nine months before trial, Robinson notes he had met with Brusch four times as of that date. This level of communication exceeds the amount of contact held to satisfy prevailing professional norms.

Robinson also claims Brusch attempted to withdraw during jury selection, which rendered Brusch's assistance ineffective. Pet'r's Br. at 4. During jury selection, but outside the hearing of any panel members, Brusch apprised the trial court there was an issue as to whether he should withdraw. Brusch did so only after Robinson had made a series of lengthy and disjointed complaints to the trial court about Brusch's representation. Jury Selection Tr., vol. 5, 13-18, July 15, 2005; *see* Jury Selection Tr., vol. 5, 15 ("[My attorney] has done nothing, is doing nothing, and thinking it's a joke."). In response to Robinson's complaints, Brusch informed the court, "I think I'm compelled to withdraw from [the] representation . . . ." Jury Selection Tr., vol. 5, 147. The court informed Brusch, "Mr. Robinson has made complaints about you, but he has not asked that you withdraw from the case. Is that right?" Jury Selection Tr., vol. 5, 147. When asked directly, Robinson did not indicate he wanted his counsel to withdraw. Jury Selection Tr., vol. 5, 147-51.

Robinson fails to show his attorney's actions during jury selection constituted deficient performance under *Strickland*. Brusch did not seek to withdraw from the representation on his own accord, rather he brought his client's concerns to the court's attention. Brusch appropriately informed the court Robinson's complaints had created an issue about the propriety of Brusch's continued representation. Brusch's conduct was objectively reasonable. If anything, his actions protected, rather than prejudiced, his client's interests. Brusch's conduct is not evidence Brusch was not committed to Robinson's defense.

12

Robinson also claims his attorney failed to "contact, interview, or present" at trial certain fact witnesses. Pet'r's Br. at 6. Robinson argues their testimony would have substantially altered the outcome of his trial. Robinson appended to his instant motion affidavits of a number of persons whom he believes should have been called as trial witnesses on his behalf, but he never states what their contemplated testimony might have added to the trial.

Robinson fails to demonstrate Brusch's decision not to call certain witnesses was objectively unreasonable under *Strickland*. It is clear that "counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006). Counsel's decision to rely on certain witnesses is "entitled to a presumption of validity[]" if made by counsel after a reasonable investigation of the facts. *Id.*; *see Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990) (noting failure to interview every possible witness does not constitute ineffective assistance of counsel). To show prejudice as a result of counsel's failure to call or interview potential witnesses, the defendant's showing "'may not be based on mere speculation about what the witness [that counsel] failed to locate might have said.'" *Rolan*, 445 F.3d at 682 (quoting *United States v. Grey*, 878 F.2d 702, 712 (3d Cir. 1989)).

Robinson presents no evidence his counsel failed to conduct a reasonable investigation of Robinson's case. The decisions Brusch made about which witnesses to call at trial are thus entitled to a presumption of validity. *See Rolan*, 445 F.3d at 681-82 (holding choices made after a reasonable investigation of the factual scenario are entitled to a presumption of validity).

The affidavits Robinson appended to his petition do not describe what the affiants were expected to say at trial. Even assuming Robinson satisfied *Strickland* by demonstrating Brusch's performance was objectively deficient in failing to interview and call potential witnesses, Robinson

13

still fails to demonstrate prejudice because he has not shown with any certainty what the potential testimony would have been at trial. Robinson's claim his counsel was ineffective for failing to interview and call potential witnesses is without merit.

Robinson also claims his counsel was ineffective for failing to comply with his reciprocal discovery obligations. Pet'r's Br. at 6. Under Federal Rule of Criminal Procedure 16(a)(1)(E), a defendant is generally entitled to have access to documents and objects in the government's possession. If a defendant makes such a request, and the government complies, the defendant must then allow the government similar access to documents and objects in his possession. Fed. R. Crim. P. 16(b)(1)(A). Failure by either party to comply can result in a variety of sanctions. Fed. R. Crim. P. 16(d)(2).

Here, Robinson filed a motion for discovery and disclosure on April 29, 2003. The Government subsequently filed a motion requesting reciprocal discovery on August 27, 2003. Robinson now argues his attorney was ineffective for failing to comply with the Government's request for reciprocal discovery. The document Robinson claims Brusch failed to disclose, however, clearly falls outside the scope of the Government's request. The Government requested "all documents or tangible objects which the defendant intends to introduce as evidence at trial . . . ." United States' Mot. Requesting Reciprocal Disc. at 1. The document Robinson claims should have been disclosed to the Government was not used during the trial, nor is there evidence it was intended to be introduced at trial. As such, Robinson's attorney had no duty to disclose it to the Government, and his failure to do so did not constitute ineffective assistance.

Robinson also claims his attorney was ineffective for failing to retain an expert witness to contest wiretap evidence presented by the Government. *See* Pet'r's Br. at 6 (criticizing Brusch

because he never hired an electronic forensic lab or expert to analyse the Government's wiretap evidence, purportedly resulting in Robinson being prejudiced by tainted evidence). Although Robinson claims Brusch was instructed by the trial court to retain an expert, no order to that effect appears in the record.

Generally, the choice of whether to call an expert witness is one within an attorney's discretion. *See United States v. Caden*, Nos. 04-cv-4500, 98-cr-450-1, 2007 WL 4372819, at *4 (E.D. Pa. Dec. 12, 2007) (noting decision of whether to call expert is "fundamentally a strategic choice made [by an attorney] after a thorough investigation of the relevant law and facts") (alterations and internal quotation marks omitted); *United States v. Richardson*, No. 98-5548, 1999 WL 262435, at *5 (E.D. Pa. May 3, 1999) ("[T]he decision of whether or not to call a particular expert witness is generally a matter of trial tactics within the range of a reasonable attorney's performance.") (citing *United States v. Kirsh*, 54 F.3d 1062, 1072 (2d Cir. 1995)). Further, the defendant must provide evidence "there is a reasonable probability that the result of the proceeding would have been different" had his counsel retained an expert witness. *Wallace v. Price*, 265 F. Supp. 2d 545, 563 (W.D. Pa. 2003).

Robinson fails to produce any evidence his attorney's decision not to call an expert witness was not a reasonable, tactical decision. Robinson identifies only one phone call, out of the host introduced by the Government as evidence of his participation in the conspiracy, which he believes expert testimony would have worked to discredit. Robinson relies on an affidavit from a potential expert witness which suggests the analysis by the Government's expert of a brief portion of this call may have been inaccurate. This affidavit fails to create a reasonable probability the result of the trial would have been different had Robinson's proposed expert testified. Accordingly, Robinson's claim

15

that his counsel was ineffective for failing to hire a forensic expert fails.

Robinson also claims his counsel's failure to object to an alleged misstatement in the Government's opening statement rendered his counsel's assistance ineffective. *See* Pet'r's Br. at 7 (complaining "non-existent evidence was promised to the jury"). During opening statements, Brusch did not object when the Government's attorney stated the jury would hear about "a man named Unkay" and how "Robinson actually arranged to have Unkay there to pick up the drugs," as part of a transaction set up by Robinson's co-conspirators. Jury Selection Tr., vol. 5, 199:9-14, July 15, 2005. Robinson claims he knows no individual named Unkay.

Regardless of the truth or falsity of the Government's statements, Brusch's decision not to object does not rise to a constitutional violation. "[A]bsent egregious misstatements by the prosecutor, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct, and thus does not constitute ineffective assistance of counsel." *United States v. Lively*, 817 F. Supp. 453, 466 (D. Del.1993), *aff'd*, 14 F.3d 50 (3d Cir. 1993) (citation and internal quotation marks omitted). Even if an objection is likely to be sustained, an attorney may make a strategic decision not to object. *See Johnston v. Love*, 940 F. Supp. 738, 754 (E.D. Pa. 1996) (holding defense counsel's failure to object to the prosecutor's comments in closing argument was a matter of trial strategy and was not an instance of ineffective assistance of counsel).

Even assuming the Government misstated the facts in its opening statement, Robinson fails to show Brusch's decision to forego an objection was anything other than a permissible strategic decision. Robinson further fails to show, as required by *Strickland*, if Brusch had objected, it was reasonably probable the verdict would have been different. Accordingly, Robinson's numerous claims of his counsel's ineffective assistance fail.

In sum, Robinson fails to demonstrate any violation of either his Sixth or Fourteenth Amendment rights. The record of this case conclusively shows Robinson is not entitled to any relief on the claims he advances. Under 28 U.S.C. § 2255(b), Robinson is not entitled to have the sentence against him vacated, set aside, or corrected, and thus he is not entitled to an evidentiary hearing.

An appropriate order follows.

BY THE COURT:

Dated: November 12, 2009

__/s/Juan R. Sánchez_____
Juan R. Sánchez, Judge
United States District Court